SAMUEL KEITH BRUNSON, Petitioner v. GEORGE TATUM, COMMISSIONER, OF NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent

No. COA08-386

(Filed 21 April 2009)

**1. Administrative Law— superior court review of administrative decision—standard sufficiently identified—appellate review**

The superior court sits as an appellate court on a writ of certiorari to review an administrative decision. The court applies a de novo or whole record standard to individual issues, and must identify the standard used. Here, the judgment was sufficient to permit review on appeal to the Court of Appeals but could have been more specific.

**2. Appeal and Error— review of administrative decision— standard of review in superior court—standard of review in appellate court**

Although a superior court review of an administrative decision could have been read as applying the whole record test to all of the issues before it, including issues of law, remand was not required since the Court of Appeals is required to review such issues de novo.

**3. Motor Vehicles— conditional driving privilege—ignition interlock violation—attempt to start vehicle**

A hearing officer's determination that petitioner violated an agreement conditionally restoring his driving privileges was supported by a finding that he attempted to operate his truck by

blowing into an ignition interlock device with intent to drive the vehicle after he took cold medicine containing alcohol.

### 4. Motor Vehicles— violation of conditional driving privilege—hearing officer decision—supported by evidence

The appeal of a determination that petitioner violated a conditional driving privilege concerned the hearing officer's written decision and not the hearing officer's oral remarks. There was substantial evidence supporting DMV's conclusion that petitioner attempted to operate his vehicle after consuming alcohol in violation of his restoration agreement, and it was not necessary to consider violation of any other term of the agreement because the agreement provided that driving privileges would be revoked for violation of any term of the agreement.

Appeal by petitioner from judgment entered 12 December 2007 by Judge Phyllis M. Gorham in Sampson County Superior Court. Heard in the Court of Appeals 8 October 2008.

*McLeod & Harrop, by Donald E. Harrop, Jr., for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton and Associate Attorney General Jess D. Mekeel, for respondent-appellee.*

GEER, Judge.

Petitioner Samuel Keith Brunson appeals from the superior court's judgment upholding the decision of the Department of Motor Vehicles ("DMV") cancelling petitioner's conditional restoration agreement that had conditionally restored his driving privileges. Petitioner primarily argues that DMV erroneously concluded that he had violated that agreement by attempting to operate his truck after consuming alcohol. Petitioner does not dispute that he intended to drive his truck, that he had consumed cold medicine containing alcohol, that he blew into his truck's ignition interlock device, and that the device locked the ignition after detecting the alcohol. He argues, however, that he could only have "attempted" to operate his vehicle in violation of the agreement by actually switching on the ignition. We find petitioner's interpretation of the agreement unreasonable and hold that petitioner attempted to drive his truck when he had the intent to drive and blew into the ignition interlock device in order to start the truck so that he could drive it. Because we find peti-

tioner's remaining contentions also unpersuasive, we affirm the superior court's decision.

Facts

On 14 April 1999, petitioner's driving privileges were permanently revoked afer his third conviction for driving while impaired. Seven years later, on 14 August 2006, petitioner and DMV entered into an agreement that conditionally restored petitioner's driving privileges. As part of the conditional restoration agreement, petitioner agreed that if he violated any condition of the agreement, the restoration of driving privileges would be revoked. The agreement also required that petitioner only operate a vehicle equipped with an approved ignition interlock device.

On 22 January 2007, DMV held a non-compliance hearing to determine whether petitioner had violated the terms of the restoration agreement. Monitech, Inc., the company responsible for installing and monitoring the ignition interlock device installed in petitioner's truck, had submitted to DMV a non-compliance report indicating that on 26 November 2006 petitioner's device registered a "fail" due to a blood alcohol content ("BAC") reading of .062 at 8:02 p.m. and, at 8:20 p.m. that same night, another "fail" due to a BAC reading of .058. In addition, on 2 December 2006, the device registered a "warn" BAC of .022 at 4:16 p.m. and another "warn" BAC reading of .020 at 4:21 p.m.

At the non-compliance hearing, DMV's hearing officer asked petitioner about the two failure readings. Petitioner explained that he had been sick with the flu around Thanksgiving and that he had been taking Nyquil and 666 over-the-counter cold medicine "two, three times a day." Petitioner testified that he had gotten into his car on 26 November 2006 to go to the store to buy more cough medicine when he blew the two failure readings that caused the lockout of his ignition. Petitioner acknowledged that Monitech had cautioned him and that he had read in the device's manual that many cough medicines contain alcohol and would register on the device.

The hearing officer concluded at the hearing that petitioner had violated the conditional restoration agreement. His written hearing decision, dated 22 January 2007, concluded that petitioner had violated terms three and six of that agreement, which provide:

3. Licensee promises and agrees that he will under no circumstances drive or operate or attempt to drive or operate any motor vehicle upon the public streets, highways or public

vehicular areas after having consumed any type of alcoholic beverages, drugs or other impairing substances.

. . . .

6. The licensee shall at no time during this restoration be found by the Division to have become an excessive user of alcohol or drugs.

Based on the decision's findings of fact and conclusions of law, the hearing officer canceled petitioner's conditional restoration agreement.

On 7 February 2007, petitioner filed a petition for writ of certiorari in Sampson County Superior Court requesting review of DMV's decision. On 15 February 2007, the superior court entered an order enjoining DMV from revoking petitioner's driving privileges pending a hearing. The superior court subsequently entered a judgment on 12 December 2007 that granted the petition for writ of certiorari, but upheld the DMV's decision to cancel petitioner's conditional restoration of his driving privileges. Petitioner timely appealed to this Court. On 17 January 2008, the superior court stayed its order pending appeal, leaving in effect the prior 15 February 2007 order enjoining the DMV from cancelling petitioner's conditional restoration agreement.

## Discussion

**[1]** "When reviewing an appeal from a petition for writ of certiorari in superior court, this Court's scope of review is two-fold: (1) examine whether the superior court applied the appropriate standard of review; and, if so, (2) determine whether the superior court correctly applied the standard." *Cole v. Faulkner*, 155 N.C. App. 592, 596, 573 S.E.2d 614, 617 (2002). Petitioner first argues that the superior court failed to use the appropriate standard of review in reviewing each of the issues raised by his petition for writ of certiorari.

The superior court "sits as an appellate court on review pursuant to writ of certiorari of an administrative decision." *Blue Ridge Co. v. Town of Pineville*, 188 N.C. App. 466, 469, 655 S.E.2d 843, 845, *disc. review denied*, 362 N.C. 679, 669 S.E.2d 742 (2008). If a petitioner appeals an administrative decision "on the basis of an error of law, the [superior] court applies *de novo* review; if the petitioner alleges the decision was arbitrary and capricious, or challenges the sufficiency of the evidence, the trial court applies the whole record

test." *Id.*, 655 S.E.2d at 845-46. The superior court may properly use both standards of review in a given case, but "the standards are to be applied separately to discrete issues, and the reviewing superior court must identify which standard(s) it applied to which issues[.]" *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 15, 565 S.E.2d 9, 18 (2002) (internal citations and quotation marks omitted).

In this case, the superior court's judgment recited that it had considered the record and arguments of counsel. The judgment then stated:

Upon review of the whole record under a Petition for Writ of Certiorari, the Court finds substantial evidence in the record that the decision of the Respondent to cancel Petitioner's conditional restoration of his driving privileges was not in violation of constitutional provisions, was not in excess of statutory authority, was made upon lawful procedure, was unaffected by error of law, was supported by substantial evidence, and was neither arbitrary nor capricious.

Petitioner argues that this judgment was not sufficiently specific regarding the bases for the superior court's decision.

As this Court has explained, "[t]he trial court, when sitting as an appellate court to review an administrative agency's decision, must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999). "It is not necessary, however, that it 'make findings of fact and enter a judgment thereon in the same manner as the court would be when acting in its role as trial court.' " *Id.* (quoting *Shepherd v. Consol. Judicial Ret. Sys.*, 89 N.C. App. 560, 562, 366 S.E.2d 604, 605 (1988)). Indeed, "the duty of the superior court, and our duty as well, is not to make findings of fact, but rather to apply the appropriate standard of review to the findings and conclusions of the underlying tribunal." *Avant v. Sandhills Ctr. for Mental Health, Developmental Disabilities & Substance Abuse Servs.*, 132 N.C. App. 542, 545, 513 S.E.2d 79, 82 (1999).

The judgment in this case indicates what the superior court considered in making its decision—the entire record and the arguments of counsel—and that DMV's decision was supported by substantial evidence, was not arbitrary and capricious, was not in violation of the

constitution or statutory authority, and was not affected by error of law. Although the judgment could be more specific, it is sufficient to permit review by this Court. *See Shepherd,* 89 N.C. App. at 562, 366 S.E.2d at 606 ("Judge Bailey's judgment of 1 May 1987 recited that the court had reviewed the record and matters on file and had considered the oral arguments and relevant statutory provisions. Based on these considerations Judge Bailey concluded that the declaratory ruling of [the agency] was not erroneous as a matter of law and should be affirmed. We hold this judgment meets all the requirements of G.S. 150B-51 and is clearly sufficient as a matter of law.").

**[2]** Petitioner next contends that the superior court erred in applying the standard of review. We agree with petitioner that his petition for writ of certiorari asserted not only issues governed by the whole record test, but also issues of law requiring de novo review. The superior court's order can, however, be read as applying only the whole record test in determining all of the issues before it, including issues of law. Nevertheless, any error in failing to apply a de novo standard of review to the issues does not require remand since in any event, this Court is required to review such issues de novo. *See Capital Outdoor, Inc. v. Guilford County Bd. of Adjustment,* 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, J., dissenting) ("[A]n appellate court's obligation to review a superior court order for errors of law can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court." (internal citation omitted)), *adopted per curiam,* 355 N.C. 269, 559 S.E.2d 547 (2002).

**[3]** Turning to petitioner's contentions regarding the DMV decision, petitioner first argues that the hearing officer erred in construing term three of the conditional restoration agreement that prohibited him from "driv[ing] or operat[ing] or attempt[ing] to drive or operate any motor vehicle . . . after having consumed any type of alcoholic beverages, drugs or other impairing substances." Petitioner asserts that the word "attempt" in the agreement should be construed consistent with criminal law, which requires "(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Miller,* 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996). DMV argues, however, that since license revocation is a civil matter, the criminal definition of "attempt" is irrelevant, and the word, as used in the agreement, should be construed in accordance with its ordinary meaning. *See Black's Law Dictionary* 137 (8th ed. 2004)

("The act or an instance of making an effort to accomplish something, esp. without success."). We need not resolve this dispute between the parties because the hearing officer's finding of fact is sufficient to meet the criminal definition of attempt.

The hearing officer found:

That petitioner stated that he had been sick and drank a lot [sic] of "Nyquil and 666" cold medication during the day of November 26, 2006. Around 8 pm petitioner was on his way to the store to get more cold medication when he blew into the ignition interlock and then got his alcohol failure two times.

There is no dispute that this finding meets the first requirement for an attempt: petitioner intended to drive his car on the public highways to go to the store after having consumed alcoholic beverages in the form of cold medication. Petitioner argues, however, without citing any authority, that blowing into the ignition interlock device is not an act that goes beyond preparation.

According to petitioner, the only act that could actually constitute an attempt to drive the car would be "switching on the ignition and then turning the key forward," thereby starting the car. It is, however, well established in North Carolina that once the car engine is running, the person behind the steering wheel is considered to be driving or operating the car. *See* N.C. Gen. Stat. § 20-4.01(25) (2007) (defining "[o]perator" of motor vehicle as "[a] person in actual physical control of a vehicle which is in motion *or which has the engine running*" (emphasis added)); *State v. Fields*, 77 N.C. App. 404, 406-07, 335 S.E.2d 69, 70 (1985) ("In this case the State's evidence showed that the defendant sat behind the wheel of the car in the driver's seat and started the engine. This evidence was sufficient to show that the defendant was in actual physical control of a vehicle which had the engine running. Thus, the State's evidence was sufficient to show that the defendant 'drove' a vehicle within the meaning of G.S. 20-138.1."); *State v. Turner*, 29 N.C. App. 163, 165, 223 S.E.2d 530, 532 (1976) ("The evidence was plenary that defendant was seated behind the steering wheel of a car which had the motor running. The evidence brings defendant within the purview of the statute as to operation of the vehicle, and the evidence is plenary to support a conviction of driving under the influence.").

Consequently, under petitioner's interpretation—that an "attempt" only occurs once the person in the driver's seat has switched

on the ignition—every "attempt" to operate the car would also qualify as the completed act of actually operating the car. Petitioner's interpretation in effect writes "attempt" out of the conditional restoration agreement. As our Supreme Court has stressed, however, "[i]n interpreting contracts, . . . '[t]he various terms of the [contract] are to be harmoniously construed, and if possible, *every word and every provision is to be given effect.*' " *Singleton v. Haywood Elec. Membership Corp.*, 357 N.C. 623, 629, 588 S.E.2d 871, 875 (2003) (quoting *Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000)).

Moreover, petitioner's interpretation assumes that the ignition of a car with an ignition interlock device can be "switched on . . . after consuming alcohol." While it appears that this may be the case for a very low BAC level—resulting in a warning rather than a failure—that is not the case at other BAC levels. Petitioner's contention would, consequently, mean that a person could only violate the "attempt" prong of term three of the agreement when he had a very low BAC. For individuals with a high BAC, "attempt" would be impossible. Such a result cannot have been the intent of the agreement.

Instead, a more reasonable construction of the contract is that an act short of turning on the ignition is sufficient to constitute an "attempt" within the meaning of term three of the conditional restoration agreement. Since a person with an ignition interlock device cannot start his car—and thus operate it—without successfully blowing into the ignition interlock device, such an act goes beyond mere preparation and constitutes the necessary overt act. Accordingly, we hold that if petitioner, with the intent to drive his truck, blew into the ignition interlock device, he attempted to operate his vehicle as set out in term three of the conditional restoration agreement.

The hearing officer, in this case, made the necessary finding that petitioner, after consuming alcohol, intended to drive his car to the store and, in order to do so, blew into the ignition interlock device. That finding in turn supports the hearing officer's determination that petitioner violated term three of the agreement.

[4] Petitioner next argues that the hearing officer's findings regarding term three are not supported by substantial evidence in light of the whole record. When applying the "whole record" test, "a court must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to jus-

tify the agency's decision." *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). " 'Substantial evidence' is 'relevant evidence a reasonable mind might accept as adequate to support a conclusion.' " *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (quoting N.C. Gen. Stat. § 150B-2(8b) (2003)). Importantly, however, when applying the whole record test, the superior court "may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *Watkins*, 358 N.C. at 199, 593 S.E.2d at 769.

In support of his argument, petitioner points to the transcript and the hearing officer's following statement in support of his finding of a violation of term three: "So you've told me you were going to the store and that's where you were headed and you had consumed this before you cranked up the vehicle." Petitioner argues that the record contains no evidence that he "cranked up the vehicle." It is, however, the hearing officer's written decision that is on review and not his oral remarks at the hearing.

With respect to the written decision, petitioner simply repeats his contention that any evidence that he unsuccessfully blew into the ignition interlock device is insufficient to establish an "attempt." We have already rejected that contention. The evidence is undisputed that petitioner had consumed alcohol, that he went out to his truck with the intent to drive it to the store to buy cold medicine, that he blew into the ignition interlock device on two occasions the same evening, that the device registered two "fail" alcohol readings of .062 BAC and .058 BAC, and that the device was functioning properly. This evidence constitutes substantial evidence supporting DMV's conclusion that petitioner attempted to operate his vehicle after consuming alcohol in violation of term three of his restoration agreement. Petitioner makes no further arguments regarding term three.

Petitioner, however, also challenges DMV's determination that he violated term six of the agreement by "currently consuming alcohol to excess." We need not address petitioner's arguments relating to term six because the restoration agreement provided that petitioner's driving privileges would be revoked if he was determined to be in "violation of *any* term, restriction, or condition of this agreement . . . ." (Emphasis added.) Since we have upheld DMV's decision that petitioner violated term three, it is immaterial

whether DMV erred as to term six. The superior court, therefore, did not err in affirming DMV's decision cancelling the conditional restoration agreement.

Affirmed.

Judges ROBERT C. HUNTER and ELMORE concur.